## Cassidy *versus* Elias.

1. In an action of replevin for a distress for rent, there can be no such thing as an avowry or recognisance, while the goods are in the defendant's possession. If he claims as owner, that claim is inconsistent with the allegation that the property was seized as a pledge for rent in arrear, for this is a confession that the goods are owned by the tenant; if on the other hand he depends on his own right to distrain, he can have no standing unless he has surrendered the property, in obedience to the command of the writ.

2. In an action of replevin, the plaintiff, in his *narr.*, charged that the defendant did and still does retain the goods against gages, &c. The defendant made cognisance, and the plaintiff, in answer, pleaded that the goods seized were not distrainable and there was no rent in arrear. *Held*, that as the declaration was in the *detinet*, the cognisance was bad and must so have been pronounced on demurrer. *Held, further*, that this defect was not cured by plaintiff, in his replication, traversing the facts in the cognisance.

3. In this action the appraisement made for the plaintiff, under the Exemption Act, is not evidence of the value of the goods; neither is the price obtained by the defendant for the goods at private sale admissible to fix the value of the property in suit.

4. That the judgment, in such a case, is in excess of the value of the goods, as set forth in the writ and the *narr.*, is of no consequence, as it may be cured by amendment, even in the court of review.

June 3d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Lycoming county:* Of May Term 1879, No. 13.

Replevin by Samuel Elias against Andrew Cassidy, to recover the value of certain goods, distrained for rent in arrear, by said Cassidy, as bailiff of Charles G. Scholl, the landlord of plaintiff.

The *narr.* charged that the defendant did, and still does, detain the goods against gages, pledges, &c. The defendant filed an avowry, and the plaintiff in his replication averred, "the goods seized are not distrainable, and no rent in arrear."

The material facts were these:

Samuel Elias was adjudged a bankrupt on the 17th day of February 1875, on a petition filed against him December 23d 1874. He was, at the time, engaged in the clothing business, and occupied a store-room on the first floor of a building situate on the north side of Market square, Williamsport. His lease only covered this store-room and one-half of the cellar. His rent was payable at the end of each quarter of the year. The stock of clothing, &c., of Mr. Elias in the store-room was taken in custody by the deputy marshal, as messenger, under an order of the United States District Court, after the filing of the petition of bankruptcy against Elias, and the marshal removed the stock of goods from the store-room some time before the 1st day of April 1875, and stored it in a room in the third story of the same building. This room was entirely disconnected with the store-room, and the goods were car-

[Cassidy v. Elias.]

ried out of the store-room on the sidewalk, and thence up to the third story by a public or common stairway. The store-room was taken possession of by Charles G. Scholl, the landlord, before or on the 1st day of April 1875. The goods remained in the room on the third story of the building, and in the custody of the marshal or messenger, until the assignee of Mr. Elias was appointed, and until the 21st day of May 1875, when the assignee proceeded to the room where the goods were stored, and set out to Mr. Elias sufficient of the same to make up the exemption allowed to bankrupts under the Act of Congress.

Scholl, by his bailiff, Andrew Cassidy, immediately seized the goods for rent, alleged to be owing Scholl for the store-room on the first floor, and on the same day gave notice to Elias of the distress, and on the 22d day of May 1875, Mr. Elias issued a writ of replevin (having first given safe pledges to the sheriff) for the goods so distrained. The bailiff retained the goods and delivered them to Scholl, who sold them, after some time, at private sale.

The goods for which Elias issued his writ of replevin were valued in the writ at $1000.

At the trial, the plaintiff proposed to ask witness, "what, in his judgment, was the market value of the goods set apart?" The defendant objected, on the ground that if the landlord erred in making the distress, the Act of Assembly gave a specific remedy to the tenant, and because the goods had been appraised by sworn appraisers, and the value fixed by them was conclusive.

The court overruled the objections. First assignment of error.

The defendant proposed to ask Scholl, the landlord, "What prices did you realize from the sale of the goods?" Objected to by plaintiff, because it was the landlord's duty to make public sale; that a private sale is no criterion of value; that witness had testified he had no knowledge of the value of such goods, and was incompetent.

The court sustained the objection, saying, "A private sale is no evidence of value." Second assignment of error.

The court affirmed the following point of plaintiff:

That the defendant, having given bond, and retained the property mentioned in the writ of replevin, cannot set up a defence that he retained the property for rent in arrears. Third assignment of error.

The verdict was for plaintiff for $1161.02. After judgment the defendant took this writ and, inter alia, alleged that the court erred as set forth in the above assignments; and in allowing the jury to find for a greater amount than that fixed in the writ.

*Henry W. Watson*, for plaintiff in error.—The Act of Assembly in this state fixes the quantity of goods a debtor may retain by their value, and points out the mode to ascertain that value: Ham-

mer *v.* Freese, 7 Harris 257. The question of value was not raised by the pleadings. The amount paid for goods is prima facie evidence of their value: Sedgwick on Damages, sect. 287, p. 345; Britton *v.* Stanley, 4 Whart. 119. If the avowry was not sufficient in substance, advantage should have been taken of it by special demurrer: Baird *v.* Porter, 17 P. F. Smith 107. The plaintiff having put the facts at issue by a replication, cannot prevent the whole case going to the jury by a prayer to the court for special instructions. There is no set-off in replevin, but if the goods are subject to a charge, it can be enforced by way of recoupment: Macky *v.* Dillinger, 23 P. F. Smith 85. The value of the goods were fixed when they were set apart by the appraisers. The plaintiff could in no event recover more than the value of the goods as fixed in the writ. The damages in replevin are ordinarily the value of the goods with interest: McCabe *v.* Moorehead, 1 W. & S. 513; Schofield *v.* Ferrers, 10 Wright 438.

*J. M. Gamble* and *R. P. Allen*, for defendant in error.—This court decided in Baird *v.* Porter, *supra*, that a defendant has no right to retain the goods after a replevin, by giving a claim-property bond, unless he had a property in them which entitled him to their possession. And a landlord has neither a special or general property in goods distrained for rent, nor right to their possession after service of the replevin, and it is his duty to deliver the goods under the replevin, and look to the replevin bond.

In replevin damages beyond the value of the property may be given where the taking has been accompanied with peculiar wrong and outrage: McDonald *v.* Scaife, 1 Jones 381; Schofield *v.* Ferrers, 10 Wright 438; Etter *v.* Edwards, 4 Watts 63; Fisher *v.* Whoollery, 1 Casey 197. It cannot be contended that the appraisement of these goods under the Bankrupt Act was the only evidence that could be given of their value when taken by Scholl. That was not a proceeding between Scholl and Elias, and neither of them were estopped by the action of the appraisers.

Mr. Justice GORDON delivered the opinion of the court, October 6th 1879.

This was an action of replevin brought by Samuel Elias, the plaintiff below, for the recovery of the value of certain goods distrained, for rent in arrear, by Andrew Cassidy, the defendant, as bailiff of Charles G. Scholl, the landlord of the plaintiff. The *narr.* charges that the plaintiff did, and still does, detain the goods against gages, &c., as it is technically denominated, in the *detinet*. The defendant made cognisance, and the plaintiff, in answer, plead that the goods seized were not distrainable, and that there was no rent in arrear.

On this kind of pleading the parties went to trial, and the

[Cassidy v. Elias.]

plaintiff asked the court to charge, " that the defendant, having given bond and retained the property mentioned in the writ of replevin, he cannot set up a defence that he retained the property for rent in arrears." This point was affirmed by the court. Of this, inter alia, the defendant complains.

There is no doubt, as the declaration is in the *detinet*, the cognisance was bad and must so have been pronounced on demurrer: Baird v. Porter, 17 P. F. Smith 105.

The action of replevin, in Pennsylvania, so far as regards goods distrained for rent, is but the common-law form of that action somewhat modified by statute and practice; in its essential features, however, it continues the same. This writ formerly obtained only in one instance, that of a wrongful distress. It was intended to effect a re-delivery of the pledge, or thing distrained, to the owner, upon his giving security to prosecute his suit and to return the distress should the right be determined against him. On the giving of such securities, the sheriff was bound to restore the chattels to the tenant, unless the distrainor claimed property in them, and, in that event, the plaintiff in the replevin was compelled to sue out his writ *de proprietate probanda*, and the right of property was then disposed of by an inquest summoned, for that purpose, by the sheriff. If, however, the distrained goods had been secreted or carried out of the county, before this writ could be served, the tenant might have a *capias in withernam*, by which a reciprocal distress was made on goods of the distrainor, by way of reprisal and as a punishment for his illegal behavior. Finally, if on trial of the replevin, the distress was found to be lawful, the defendant had judgment that the distrained goods be returned to him (*de retorno habendo*), and he was then entitled to hold them until the rent was paid.

From this we learn, that the chattels distrained were regarded only as a pledge for the payment of the rent due; that the question in trial was not the right of property, but the right of possession only; that during the trial the possession, necessarily, was in the plaintiff, and that that possession passed to the distrainor only after judgment in his favor.

It is thus manifest, from the character and nature of the action of replevin for a distress for rent, that there can properly be no such thing as an avowery or cognisance whilst the goods are in the defendant's possession. If he claims the possession as owner, that claim is inconsistent with the allegation that the property was seized as a pledge for rent in arrear; for this is a confession that the goods are owned by the tenant; if, on the other hand, he defends on his right to distrain, he can have no standing unless he has surrendered the property in obedience to the command of the writ.

Clearly, then, the cognisance in this case could not have borne

[Cassidy *v.* Elias.]

the test of a demurrer. It is urged that this defect in pleading is cured by the defendant's plea, improperly called a replication, traversing the facts, set forth in the cognisance, that the goods were distrainable, and that there was rent in arrear. This would be so were the defect merely formal; not so, however, where the defect, as in this case, is material. The rule is, that the judges are bound before in any case they give judgment, to examine the whole record and then to adjudge the case as on the whole it may appear, without regard to the issue of law or fact that may have been raised and decided between the parties, and this, it is said, because the pleader, from misapprehension, may have passed by a material question of law without taking issue upon it: Stephen on Plead. 119–120.

Had, then, the verdict been for the defendant, we would have been obliged, on inspection of the record, to reverse, because the pleadings show him to be in the possession of property to which he has no right, and, on strict common-law rule, judgment would have to be entered for the plaintiff *non obstante veredicto*. As it is, the judgment of the court below is right, though regularly it should have been reached through a demurrer.

The remaining assignments require but little consideration. The appraisement made for the plaintiff under the Exemption Act was not evidence of the value of the goods; it was foreign to the case trying, it was but the opinion of the appraisers, and if this was of value to the defendant, he might have produced them as witnesses on the trial. Neither was the price the defendant obtained for the goods, at private sale, admissible to fix the value of the property in suit, for this was *ex parte*, and the inquiry must remain whether that price was or was not the fair market value, so that such evidence would settle nothing. That the judgment was in excess of the value of the goods, as set forth in the writ and *narr.*, comes to nothing, for this is a purely technical defect, and might have been cured by amendment, and may, therefore, now be treated as amended.

Judgment affirmed.